**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Erin Jones, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 21 cv 0137 |
| | ) | |
| v. | ) | Hon. Charles P. Kocoras |
| | ) | |
| City of Chicago | ) | Magistrate Judge Heather K. McShain |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S 56.1(B)(3)(C)**
**STATEMENT OF ADDITIONAL FACTS**

Pursuant to Northern District of Illinois Local Rule 56.1(b)(3)(C), Defendant City of Chicago ("City"), through the Corporation Counsel of the City of Chicago, respectfully submits the following response to Plaintiff's statement of undisputed material facts (ECF No. 34).

1.      In his Facebook posts, he expresses dislike and disdain through hateful and/or sarcastic posts that are directed at many minority groups. He maintained these posts on Facebook for at least two years, before they were taken down only because they were seen by the police department, and it got him in trouble. This includes Facebook posts that degrade women, African Americans, Mexicans, Muslims, and Jews. If judged by the number of posts that are directed at a particular group, women and African Americans are Topczewski's favorite groups to demean, as there are 5 posts that degrade African Americans and 8 posts that degrade women. In one post, that apparently became his profile picture, there is the Grim Reaper with a confederate flag over his shoulder. Ex. A. The Facebook Posts were dated during the year 2015. *Topczewski Dep* at 51:10-54:7. As a result of a CR and investigation into Topczewski's posts that began in 2017, he was disciplined and suspended for 3 days. Assaf Dep. Ex. 7, at 33:13-34:13.

**RESPONSE:** Defendant objects to paragraph 1 as immaterial to the claims at issue in this case as all of said posts occurred before the timeframe of the subject complaint and thus should be stricken. See *De v. City of Chicago*, 912 F.Supp.2d 709, 712-713 (N.D. Ill. 2012) ("vague, argumentative, immaterial, or conclusory allegations" are improper under Local Rule 56.1 and finding that the assertion of facts not supported by the record should be disregarded) (*citing Roger Whitemore's Auto Servs., Inc. v. Lake Cnty.*, 424 F.3d 659, 674 (7th Cir. 2005)); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 598-99 (7th Cir. 2000) (material facts are those that might affect the outcome of the suit). Defendant admits Topczewski was suspended for 3 days but objects that said suspension is immaterial to the claims at issue in this lawsuit. *See De*, 912 F.Supp.2d at 712-713.

2.      The last time Jones complained to Topczewski was after the team performed a search warrant. She complained because Topczewski was not doing his job and it was unsafe because of that. In response to this complaining, Topczewski would only roll his eyes, wave his hands in the air, and voice a "tsk, tsk." It was after the third occasion that Officer Mark Diaz reported to Jones that Topczewski then said, "that's why women don't belong on the job." Just before this, Diaz had seen Jones complaining to Topczewski about the work she was doing. The conversation was "a little heated" and Diaz could see that Jones was "upset." *Pltf's Dep.*, Ex. 1, at 90-92; *Diaz Dep.*, Ex. 5 at 22.

**RESPONSE: Admit.**

3.      While exercising his power as supervisor of the narcotics team, Sgt. Topczewski degraded and humiliated several team members, including Erin Jones, the only woman on the team, and two male Hispanic officers, Officers Mark Diaz and Ronald Mero. (*Pltf.'s Dep.*, Ex. 1, at 49:7-50:7)

**RESPONSE:** Defendant objects to Plaintiff's assertion that Topczewski degraded and humiliated several team members as argumentative and conclusory. See *Boyd v. City of Chicago*, 225 F.Supp.3d 708, 716 (N.D. Ill. Dec. 6, 2016) (holding that nonmovant's response

to the movant's statement of facts and statement of additional facts must represent only material facts and are not the proper province of argumentative or conclusory allegations and finding that assertion of facts not supported by the record should be disregarded.) Moreover, Defendant objects to Plaintiff's assertion that Erin Jones was the only woman on the team as a misstatement of the record. (***Mero Dep.***, Ex. 6, at 9:8-15). See ***Boyd***, 225 F.Supp.3d at 715 (holding that it is improper for a party to misstate the cited record and the consequence of doing so is that those responses are disregarded.)

4.      Further, there were two Hispanic officers on the team with Erin when she was there also under Topczewski's supervision. They were Ronald Mero and Mark Diaz. *Mero Dep.,* Ex. 6 at 10:2-4, 11:16-20.

**RESPONSE:** Admit.

5.      One of the Hispanic officers, Mark Diaz, reported to Plaintiff that he heard Topczewski blurt out to others, "that's why women don't belong on the department." Officer Diaz decided he too needed to transfer off that team while Topczewski was the Sergeant because he generally felt he was being mistreated (as did Jones) and this included being given unnecessary paperwork to do (as was Erin Jones; see infra). *Diaz Dep.,* Ex. 5 at 23:14-25:19, 30:7-18.

**RESPONSE:** Admit.

6.      The other Hispanic Officer at that time, Ronald Mero, also requested to transfer reassignment. Ex. C. In the memo he described how Topczewski was compromising his safety, and he too (like Jones) complained about it, and he too was subjected to retaliation because he complained about it. Subsequently, Topczewski was admonished by his supervisor for the way he handled Mero's situation. Ex. D. Also, similarly to Jones, Mero "felt like he was disrespected by the way he addresses himself to me." He also indicated that this enough for him to ask for reassignment. Mero Dep., Ex. 6, at 20:4-11.

3

**RESPONSE:** Defendant objects to Plaintiff's assertion that Officer Mero was subjected to retaliation because he requested re-assignment from Topczewski's unit as a misstatement of the record. *Mero Dep.,* Ex. 6, at 19:20-20:1-3. *See Boyd*, 225 F.Supp.3d at 715 (holding that it is improper for a party to misstate the cited record and the consequence of doing so is that those responses are disregarded.) Mero further testified that he could not say how Topczewski treated him was because he was Hispanic and, in fact, Topczewski had his differences with other officers on the tram as well. *Mero Dep.,* Ex. 6, at 20:23-21:6. Defendant admits sentences 1, 3, 4, and 5 of paragraph 6.

7.      Beginning on that date, until Jones was transferred from the team, she was made to be the undercover "buy" officer on *virtually every buy that was made*, during the time that Topczewski was her Sergeant. *Pltf's Dep.,* Ex. 1, at 72:17-23. This is also shown in Exhibits E and F. Exhibit E is an activity log maintained by the police department that recorded the activity of the team, including the different roles of police officers at the time they undertook an operation. *Ryle Dep.*, Ex. G, at 43:24-53:2-1. Exhibit F is a log that Plaintiff maintained from records at the police department wherein she recorded the activity of her team as it related to who was doing the buys. Jones dec.

**RESPONSE:** Defendant objects to Plaintiff's assertion in sentence 1 of paragraph 7 that she was made to be the undercover "buy" officer on *virtually every buy that was made* during the time Topczewski was her Sergeant as conclusory and argumentative. See *De*, 912 F.Supp.2d at 712-713 ("vague, argumentative, immaterial, or conclusory allegations" are improper under Local Rule 56.1 and finding that the assertion of facts not supported by the record should be disregarded) (*citing Roger Whitemore's Auto Servs., Inc.*, 424 F.3d at 674). Of the 28 controlled buy operations documented, Plaintiff only conducted buys on 11 of them. PSAF, Ex. E., See *Boyd*, 225 F.Supp.3d at 715 (holding that it is improper for a party to misstate the

cited record and the consequence of doing so is that those responses are disregarded.) Defendant admits the remaining sentences in this paragraph.

8.      The "buy" officer is the officer who goes undercover to try and buy narcotics from a drug dealer. Jones and the Narcotics Unit, including Commander Kimble, considered this to be an especially dangerous and stressful job because the safety of a buy officer is endangered by the nature of the job. For example, a buy officer might have to be in some very vulnerable situations, like a target's car. In this role, Jones has been directly threatened while doing his job on several occasions. One example is after going into a house to do a buy, the doors were barricaded behind her trapping her inside and out of sight of officers who were there to surveil her activities. On another occasion, she had gotten into a target's car "where they've sold me dope and asked if I wanted to suck their dick instead of having to pay for my heroin." The undercover buy officer is the role that the other officers are assigned to protect because of its danger. RDSOF, at 7; *Pltf's Dep.,* Ex. 1, at 85-86.

**RESPONSE:** **Admit that this is what Plaintiff's RDSOF at 7 states. Additionally, admit that paragraph 8 approximates Plaintiff's deposition testimony.**

9.      Those buys accounted for possibly 7 of the buys, but not the remainder. Nevertheless other officers worked this investigations, and other officers were deemed to be the primary officers, such as Padalino, was the lead investigator on various parts of the investigation on the dates of July 18, 20, 26, 29 and August 3. Ex. E. Exhibit E is an activity sheet that documents the buys and what role each officer had on a particular operation. They too could have done some of those buys. Jones dec. Notwithstanding this, Topczewski assigned Jones to do all of these controlled buys. Pltf's Dep., Ex. 1, at 80:8-81:2.

**RESPONSE:** **Defendant admits sentences 1, 2, 3, and 5 of paragraph 9 but objects to Plaintiff's assertion in sentence 4 of paragraph 9 that other officers could have done some of those buys as conclusory and argumentative. See *De*, 912 F.Supp.2d at 712-713 ("vague,**

argumentative, immaterial, or conclusory allegations" are improper under Local Rule 56.1 and finding that the assertion of facts not supported by the record should be disregarded) (*citing Roger Whitemore's Auto Servs., Inc.*, 424 F.3d at 674). See also *Berry v. Chicago Transit Auth.*, 618 F.3d 688, 692 (7th Cir. 2010) (rejecting uncorroborated testimony that was speculative and conclusory) *citing Payne v. Pauley*, 337 F.3d 767, 770-73 (7th Cir. 2003).

10.     Both Lt. Mostek and Kimble both testified that the officer who does the undercover buy is spread around to various officers on the team. This is because the sergeant generally does not assign who is to make a buy. *Mostek Dep.,* Ex. 4, at 22:8-23:3. Rather, generally, the buy officer is determined by who is doing an investigation and who has contacts with the target. *Id.* In fact, Commander Kimble encourages various officers to do undercover buys so that they could be experienced in doing that. *Kimble Dep.*, Ex. 3, at 22:23-23:5.

**RESPONSE: Admit.**

11.     The sergeant was to keep an eye on the operation. He would try to ensure that a car would be driving in front of the target vehicle (assuming the buy was taking place in a vehicle) to try and control how fast the target car was going, and if needed, he would direct cars to parallel on other streets to help view the target car. Also, as happened on one occasion, if there was a buy not going as planned because the target was taking too much time (which itself might be a setup or countersurveillance), the buy officer would get direction from the sergeant regarding whether they should re-locate or do something else that would be helpful. *Pltf's Dep.,* Ex. 1, at 70:7-72:4.

**RESPONSE: Defendant admits that paragraph 11 is an approximation of Plaintiff's deposition testimony.**

12.     However, Topczewski would not undertake his responsibilities. He often would not be present and available by radio, and he did not coordinate the activities of the officers when Jones was the buy officer. *Id.* at 69:19-72:16. This resulted in increased danger to Jones and was the cause of her repeated

complaints to him and his supervisors. RDSOF, at 18. In the context of her safety being compromised, her complaints included that he did not "put any of the guys out here like this." *Pltf's Dep.,* Ex. 1, at 169:2-170:13.

**RESPONSE:** Defendant objects to sentence 1 of paragraph 12 as vague, argumentative, and conclusory. See *De v,* 912 F.Supp.2d at 712-713 ("vague, argumentative, immaterial, or conclusory allegations" are improper under Local Rule 56.1 and finding that the assertion of facts not supported by the record should be disregarded) (*citing Roger Whitemore's Auto Servs., Inc.,* 424 F.3d at 674). Defendant admits that sentence 2 of paragraph 12 approximates Plaintiff's deposition testimony. Defendant admits that sentence 3 of paragraph 12 approximates the Defendants Statement of Facts at 18 and Plaintiff's response to said statement. Defendant objects to sentence 4 of paragraph 12 as misstating the record. See *Boyd,* 225 F.Supp.3d at 715 (holding that it is improper for a party to misstate the cited record and the consequence of doing so is that those responses are disregarded.) Subject to said objection, Defendant states that Officer Mero testified that he believed Topczewski compromised his safety by ordering him to work the enforcement car without a partner. *Mero Dep.,* Ex. 6, 14:2-17:7.

13.     Topczewski would routinely not communicate the plans for the day to Jones, but rather, he would take the male officers aside whisper the plans for the day to them that she needed to know. Jones would try to make contact with Topczewski over the radio to discuss work issues, but he would ignore her. Thus, when there was a plan to meet with another narcotics team, he would not tell Jones where the meeting was to take place, rather, she would have to find out from another team member. However, when a male officer tried to make contact over the radio he would immediately respond. *Pltf's Dep.,* Ex. 1, at 34:6-35:19; 38:11-40:20.

**RESPONSE:** **Defendant admits that paragraph 13 is an approximation of Plaintiff's deposition testimony.**

14.     Also when Jones would try to speak among the group of officers on the team, Topczewski would be dismissive. When this happened, Topczewski "would waive his hand and laugh and roll his eyes and look at another male team member and just, you know, shake his head like it was a big joke that [Jones] would try to contribute anything." He did the latter on a daily basis. *Pltf's Dep.*, Ex. 1, at 40:5-20, 171:9-172:12; Jones Dec.

**RESPONSE:** **Defendant admits that sentences 1 and 2 of paragraph 14 approximate Plaintiff's deposition testimony. Defendant objects to sentence 3 of paragraph 14 because it is conclusory and misstates the record. See *De*, 912 F.Supp.2d at 712-713 ("vague, argumentative, immaterial, or conclusory allegations" are improper under Local Rule 56.1 and finding that the assertion of facts not supported by the record should be disregarded) (*citing Roger Whitemore's Auto Servs.*, Inc., 424 F.3d at 674). See also *Boyd*, 225 F.Supp.3d at 715 (holding that it is improper for a party to misstate the cited record and the consequence of doing so is that those responses are disregarded.)**

15.     Topczewski publicly embarrassed Jones. On this occasion, many officers of different teams met at a designated location to do a briefing on a F.B.I. task force that was needed to assist in conducting surveillance on one of their targets. The task force instructs the officers about what needs to be done. The participating officers started to formulate a plan of how they would execute the surveillance. Jones felt that she would pair up with another female, Tiffany Rodriguez, with whom Jones felt that she worked well. When Jones proposed this, Topczewski immediately said no. When Jones pressed him as to why not, he said "are you gonna make me say it." Jones responded: "I don't know what you're gonna say. I don't know why I can't work with Tiffany. Topczewski said that it was not safe. When Jones asked why it was not safe, Topczewski said "it's not safe for two women to

work in the same car together." Topczewski than told her that she had to work in a van with two males. She was placed in the back of the van while the two males were the driver and passenger and, as a result, she had nothing to do. She was humiliated and embarrassed in front of all the other officers. *Pltf's Dep.,* Ex. 1, at 42:2-47:12.

**RESPONSE: Defendant objects to sentence 1 of paragraph 15 as argumentative and conclusory**. See *De***, 912 F.Supp.2d at 712-713 ("vague, argumentative, immaterial, or conclusory allegations" are improper under Local Rule 56.1 and finding that the assertion of facts not supported by the record should be disregarded) (*citing Roger Whitemore's Auto Servs., Inc.***, 424 F.3d at 674). Defendant admits that sentences 2-6 of paragraph 15 are an approximation of Plaintiff's deposition testimony. Defendant admits the testimony quoted in sentences 7 and 8 of paragraph 15 are contained in Plaintiff's deposition. Defendant admits that sentence 9 of paragraph 15 is an approximation of Plaintiff's deposition testimony. Defendant admits the testimony quoted in sentence 10 of paragraph 15 is contained in Plaintiff's deposition. Defendant admits the remaining sentences of paragraph 15 are an approximation of Plaintiff's deposition testimony.**

16.     In the police department there is no policy that says two females cannot partner together. *Mostek Dep.,* Ex. 4 at 32:22-33:8. In fact, Plaintiff had done it in the past when she was not working under Topczewski's supervision. Jones Dec.

**RESPONSE: Defendant objects to sentence 1 of paragraph 16 as it misstates the record. See *Boyd***, 225 F.Supp.3d at 715 (holding that it is improper for a party to misstate the cited record and the consequence of doing so is that those responses are disregarded.) Subject to the objection, Defendant states that the cited portion of Mostek's deposition makes no mention of a policy regarding two females partnering together. Defendant admits sentence 2 of paragraph 16.**

17.     The CPD had reporting rules to follow when an officer believed that she was being the subject of discrimination. The policy provides that any person "who believes that he or she has been the victim of employment discrimination may bring a complaint to any of the following department members or offices,…" This includes any CPD supervisor. When a complaint is made, "the supervisor who first receives an EEO complaint will, …initiate the complaint disciplinary procedures and obtain a complaint register number for all employment discrimination complaints. This was Lt. Mostek's understanding of the policy. *Mostek Dep.,* Ex. 4, at 26:8-27:11. Plaintiff complained to Mostek on August 17, 2017. Ex. H, no. 6.

**RESPONSE: Defendant admits all of paragraph 17 except for the last sentence. Defendant objects to the last sentence pertaining to Plaintiff complaining to Mostek on August 17, 2017, as a misstatement of the record. See *Boyd*, 225 F.Supp.3d at 715 (holding that it is improper for a party to misstate the cited record and the consequence of doing so is that those responses are disregarded.) Defendant states that the record cited to by the Plaintiff contains no evidence of when the actual complaint to Mostek was made.**

18.     Mostek claims that he did an investigation, but he did not obtain a complaint register ("CR") for it as he was supposed to do. A CR would have caused there to be a formal investigation with recorded statements being taken. Instead, there was a finding against Mostek because he did not appropriately take the complaint and have it investigated as it should have been. Mostek Dep, Ex. 4, at 6:3-7:8.

**RESPONSE: Defendant objects to paragraph 18 as said facts are irrelevant and immaterial and thus should be stricken. See *De*, 912 F.Supp.2d at 712-713 ("vague, argumentative, immaterial, or conclusory allegations" are improper under Local Rule 56.1 and finding that the assertion of facts not supported by the record should be disregarded) (citing *Roger***

*Whitemore's Auto Servs., Inc.*, 424 F.3d at 674); *Insolia v. Philip Morris, Inc.*, 216 F.3d at 598-99 (material facts are those that might affect the outcome of the suit).

19.     Mostek acknowledged that Jones told him she was being singled out to do more than her share and that she was being discriminated against. He also admitted that Jones likely told him more but that he could not remember it. Mostek could only recall talking to one officer on the team about it (Officer Padalino). He testified that Padalino confirmed that Topczewski was not paying attention when undercover buys were taking place. Mostek did not ask Padalino whether he thought that Topczewski did not like women, but did ask him if Jones was the only person making undercover buys. Mostek "believes" that Padalino stated "no" to do this. But when asked if he consulted the activity sheets to determine if Jones was the only one doing undercover buys he could only state that he was not sure. *Mostek Dep.,* Ex. 4, at 17:3-19:24.

**RESPONSE: Defendant objects to paragraph 19 as said facts are irrelevant and immaterial and thus should be stricken. See *De*, 912 F.Supp.2d at 712-713 ("vague, argumentative, immaterial, or conclusory allegations" are improper under Local Rule 56.1 and finding that the assertion of facts not supported by the record should be disregarded) (citing *Roger Whitemore's Auto Servs., Inc.*, 424 F.3d at 674); *Insolia v. Philip Morris, Inc.*, 216 F.3d at 598-99 (material facts are those that might affect the outcome of the suit). Subject to said objection, Defendant admits that paragraph 19 approximates Mostek's deposition testimony.**

20.     Mostek testified that he talked to Topczewski about Jones' complaint. Nobody else was present, and there is no record of it. He testified that Topczewski responded positively to Mostek reinforcing the rules on how undercover buys should be conducted. He also testified that Topczewski denied singling Jones out, but he did not ask anything about Jones' indicating that Topczewski did not like women. He did not ask about this because he "didn't feel that that had anything to do with him conducting narcotics operations in an unsafe manner. Mostek also told Commander Kimble about

the complaint, but he did nothing at that time, apparently because he felt that Topczewski was within his rights to do as he did. *Mostek Dep.*, Ex. 4, at 23:17-25:13; *Kimble Dep.*, Ex. 3, at 44:1-18.

**RESPONSE:** Defendant admits all sentences in paragraph 20 except the final one. Defendant objects to the last sentence that "Mostek also told Commander Kimble about the complaint, but he did nothing at that time, apparently because he felt that Topczewski was within his rights to do as he did" as argumentative and conclusory. See *De*, 912 F.Supp.2d at 712-713 ("vague, argumentative, immaterial, or conclusory allegations" are improper under Local Rule 56.1 and finding that the assertion of facts not supported by the record should be disregarded) (citing *Roger Whitemore's Auto Servs., Inc.*, 424 F.3d at 674). Furthermore, Defendant objects to the last sentence of paragraph 20 for misstating the record. See *Boyd*, 225 F.Supp.3d at 715 (holding that it is improper for a party to misstate the cited record and the consequence of doing so is that those responses are disregarded.)

21.     Notwithstanding Mostek's "investigation," and Jones' complaints to Topczewski things did not change for Jones, and in fact became worse. Jones continued to be the only officer doing undercover buys for the team. Further, after Jones complained to Topczewski, he became more dismissive of her, more frequently would not inform her of the team's plans, and she was doing more undercover buys at that point. Similarly, after Jones' complained to Mostek, things only got worse, and this is what prompted Plaintiff to complain further up the chain of command to Commander Kimble. *Pltf's Dep.*, Ex. 1, at 169:2-170:14. Jones Dec.

**RESPONSE:** Defendant objects to paragraph 21 as vague, argumentative, and conclusory. See *De*, 912 F.Supp.2d at 712-713 ("vague, argumentative, immaterial, or conclusory allegations" are improper under Local Rule 56.1 and finding that the assertion of facts not supported by the record should be disregarded) (citing *Roger Whitemore's Auto Servs., Inc.*, 424 F.3d at 674). Subject to the objection, Defendant states that Exhibit E attached to

Plaintiff's Statement of Additional Facts shows that of the 28 controlled buy operations documented during the subject time period Plaintiff only conducted buys on 11 of them. **PSAF, Ex. E.**

22.     In fact, the next day, on August 18, Jones and her team was assisting another team and at 1:38 pm, Jones radioed Topczewski to get direction, because she was given none. He ignored her. Jones Dec.

**RESPONSE: Admit.**

23.     Thereafter, on September 9, Topczewski ran into a friend of Plaintiff's at a neighborhood festival. He proceeded to loudly and drunkenly disparage and ridicule Jones. On this occasion, Joyce Shean, a fellow police officer, and acquaintance of both Jones and Topczewski, saw Topczewski with a group of friends. Topczewski began swearing at Shean "for being friends with Erin and kind of had to be pulled away by his friends. . ." Shean testified that Topczewski was screaming at her because she was friends with that "fucking bitch" in reference to Jones. In a subsequent chance meeting, Topczewski refused to talk to Shean. *Shean Dep.,* Ex. K, at 8:23-13:23.

**RESPONSE: Defendant admits the first sentence of paragraph 23. Defendant admits that sentences 2-5 are an approximation of Shean's deposition testimony. Defendant, objects to the last sentence of paragraph 23 as immaterial, speculative, and conclusory since Shean only believed that Topczewski's silence towards her was related to Jones but had no actual knowledge if that was the reason and thus this sentence should be stricken. (PSAF, Ex. K, 16:5-15). See *De,* 912 F.Supp.2d at 712-713 ("vague, argumentative, immaterial, or conclusory allegations" are improper under Local Rule 56.1 and finding that the assertion of facts not supported by the record should be disregarded) (citing *Roger Whitemore's Auto Servs., Inc.,* 424 F.3d at 674). See also, *Berry v. Chicago Transit Auth.,* 618 F.3d at 692 (rejecting uncorroborated testimony that was speculative and conclusory) *citing Payne v. Pauley,* 337**

F.3d at 770-73; *Insolia v. Philip Morris, Inc.*, 216 F.3d at 598-99 (material facts are those that might affect the outcome of the suit).

24.     On September 13, Jones again went further up the chain of command and complained to Commander Kimble. She went to complain to him because her previous complaints were being ignored. Jones informed Kimble what had been transpiring, including her safety and workload complaints. Jones' primary complaint, again, was that there was a "complete lack of regard for my safety." She also told him about how Topczewski would not let her partner with another female, embarrassing her in front of her peers, and that he had said that "women don't belong on the job." Jones also brought Kimble the Facebook posts that she discovered as discussed above. Jones also told Kimble that she did not want to be removed from the team because they were in the middle of an investigation. Equally important to Jones, there is a stigma to being removed from a team. *Pltf's Dep.*, Ex. 1, at 97:2-99:14.

**RESPONSE:** Defendant admits sentence 1 of paragraph 24. Defendant objects to Plaintiff's statement that "her previous complaints were being ignored" as a misstatement of the record since Lt. Mostek testified that he acted on Plaintiff's original complaints. *Ex. 4*, 23:22-25:15. See *Boyd*, 225 F.Supp.3d at 715 (holding that it is improper for a party to misstate the cited record and the consequence of doing so is that those responses are disregarded.) Defendant admits that the quoted testimony in sentence 4 of the above paragraph is contained in Plaintiff's deposition but objects to Plaintiff's characterization of "a complete lack of regard for her safety" as being unsupported by specific facts. *Topczewski* Dec. See *Berry*, 618 F.3d at 692 (rejecting uncorroborated testimony that was speculative and conclusory) *citing Payne v. Pauley*, 337 F.3d at 770-73. Defendant admits that sentence 5 of paragraph 24 approximates Plaintiff's deposition testimony. Defendant objects to sentence 6 of paragraph 24 as immaterial since the Facebook posts in question all occurred before the timeframe of the

14

subject incidents and thus sentence 6 should be stricken. *See De*, 912 F.Supp.2d at 712-713 ("vague, argumentative, immaterial, or conclusory allegations" are improper under Local Rule 56.1 and finding that the assertion of facts not supported by the record should be disregarded) (citing *Roger Whitemore's Auto Servs., Inc.*, 424 F.3d at 674); *Insolia v. Philip Morris, Inc.*, 216 F.3d at 598-99 (material facts are those that might affect the outcome of the suit). Defendant admits that Plaintiff communicated to Kimble her desire not to be removed from the team but objects to any characterization of such a removal as being a stigmatized as a misstatement of the record, immaterial, conclusory, and speculative. *Kimble* Dec. *See De*, 912 F.Supp.2d at 712-713 ("vague, argumentative, immaterial, or conclusory allegations" are improper under Local Rule 56.1 and finding that the assertion of facts not supported by the record should be disregarded) (citing *Roger Whitemore's Auto Servs., Inc.*, 424 F.3d at 674). *See also, Berry*, 618 F.3d at 692 (rejecting uncorroborated testimony that was speculative and conclusory) *citing Payne*, 337 F.3d at 770-73.

25.      In response, Kimble said he wanted time to think about it and he made copies of the Facebook posts that she brought him. That evening, Kible telephoned Jones and told her that she should meet with him the following day. *Pltf's Dep.*, Ex. 1, at 100:2-11.

**RESPONSE: Admit.**

26.      The following day Jones was directed to see Lt. Ryle. He informed Jones that she was being moved to another team. Kimble testified that he did this because he had "concerns" about the situation. He also informed Jones that they would get a CR number on Topczewski. Kimble then came to see Plaintiff as she was removing things from her office. Kimble told her that she has "to take some responsibility for the situation." He also said, in that conversation, that there is a text message thing going on. *Id.* at 100:12-20.

15

**RESPONSE:** Defendant admits sentences 1 and 2 of paragraph 26. Defendant objects to sentence 3 of paragraph 26 as misstating the record. Kimble testified that he spoke with Topczewski about Plaintiff being **"unhappy with how the team was being ran and how she was treated, and because of that concern and other concerns I'm going to choose to move her to another team."** *Kimble Dep.*, Ex. 3, 37:20-38:2. See *Boyd*, 225 F.Supp.3d at 715 (holding that it is improper for a party to misstate the cited record and the consequence of doing so is that those responses are disregarded.) Defendant objects to the remainder of paragraph 26 as all of the remaining sentences are hearsay. *Bordelon v. Bd. Of Educ. Of Chi.,* 811 F.3d 984, 991-2 (7th Cir. 2017) (hearsay is inadmissible in summary judgment proceedings to the same extent it is inadmissible in a trial).

27.     Kimble acknowledges that Jones complained to him as indicated above, including not being able to partner with a female, that she was making all the undercover buys, that she felt that Topczewski was discriminating against her, and that she showed him Facebook posts. *Kimble Dep*, Ex. 3, at 30-31. Kimble decided that he was not going to initiate an investigation about the complaint. This is the reason he gave that no investigation was needed because he believed that Topczewski could run his team as he sees fit. *Kimble Dep.*, Ex. 3, at 30:13-32:8. Kimble admitted to seeing only two of the Facebook posts (contrary to Jones' testimony regarding showing him all the posts). He saw the posts of the "He-man's women hater Club" and the post with the Confederate flag. Kimble did not feel the post degraded women and he did not feel that the confederate flag post was negative toward African Americans, testifying that "it's personal opinion." (Kimble is African American). *Id.* at 35:9-36:10. In a contrary manner, he also denied that Jones told him that she was being discriminated against. Id. at 38:12-17.

**RESPONSE:** Defendant admits the first sentence of paragraph 27. Defendant objects to sentences 2 and 3 of the above paragraph as argumentative, conclusory, and a misstatement

of the record. Kimble testified that "there was no investigation needed in my eyesight. . .because that was her [Jones'] opinion and Topczewski was the captain of his team and ran his team as he saw fit." *Kimble Dep.,* Ex. 3, 32:1-8. See *De*, 912 F.Supp.2d at 712-713 ("vague, argumentative, immaterial, or conclusory allegations" are improper under Local Rule 56.1 and finding that the assertion of facts not supported by the record should be disregarded) (citing *Roger Whitemore's Auto Servs., Inc.*, 424 F.3d at 674). See also, *Boyd*, 225 F.Supp.3d at 715 (holding that it is improper for a party to misstate the cited record and the consequence of doing so is that those responses are disregarded.) Defendant objects to sentence 4 of paragraph 27 as argumentative. See *De*, 912 F.Supp.2d at 712-713. Defendant objects to sentences 5-7 of paragraph 27 as argumentative, conclusory, and immaterial, and a misstatement of the record, and thus these sentences should be stricken. *Insolia v. Philip Morris, Inc.*, 216 F.3d at 598-99 (material facts are those that might affect the outcome of the suit). Additionally, Kimble testified that "I never said she [Jones] made a complaint to me about being discriminated against. I said she was unhappy." *Kimble Dep.,* Ex. 3, 38:12-17. See *De*, 912 F.Supp.2d at 712-713 ("vague, argumentative, immaterial, or conclusory allegations" are improper under Local Rule 56.1 and finding that the assertion of facts not supported by the record should be disregarded) (citing *Roger Whitemore's Auto Servs., Inc.*, 424 F.3d at 674).

28.     In addition to this, after Jones complained to Topczewski, he became treating her more poorly on a regular basis. He ignored her more and was openly hostile to her. It was common for many of the male white officers to come to work an hour or more late. When Jones would come in even 5 minutes late, he began calling and texting her and then he would berate her when she came in. He did not do this to the white males. *Pltf's Dep.,* Ex. 1, at 34:6-25:9.

**RESPONSE:** Defendant objects to paragraph 28 as argumentative, conclusory, and a misstatement of the record. Plaintiff made no mention of the sex or race of the other officers in her testimony rather she testified that **"When we would meet in the mornings, there would be people that would be late, an hour late, hour, hour and a half late. He didn't care. Oh, whatever, they'll get here. If I had to stop and get gas or was running five minutes late, he would just start calling my phone and, you know, where are you. Sending texts. Where are you. What's taking – I'm five minutes out. When I would get there I'd be like, oh, you finally work now, huh? But people were late like for an hour or so, and that was oh, no, they're fine."** *Pltf's Dep.,* Ex. 1, at 34:23-35:9. See *De*, 912 F.Supp.2d at 712-713 (**"vague, argumentative, immaterial, or conclusory allegations"** are improper under Local Rule 56.1 and finding that the assertion of facts not supported by the record should be disregarded) (citing *Roger Whitemore's Auto Servs., Inc.*, 424 F.3d at 674). See also, *Boyd*, 225 F.Supp.3d at 715 (holding that it is improper for a party to misstate the cited record and the consequence of doing so is that those responses are disregarded.)

29.     Many of the undercover buys, approximately 7 of them, were in connection with an operation that Jones was working. As shown in the activity log, Exhibit E, many of those buys occurred when others, such as Officer Padalino, were the primary or lead investigator. In any of those buys, Padalino and others would have been perfectly capable of, and it would have been operationally appropriate for them to do the buys. As shown on Exhibit E, Padalino was the lead investigator on various parts of that investigation on the dates of July 18, 20, 26, 29, and August 3rd, and he could have operationally done those buys, but for the fact that Topczewski ordered Jones to do them. On the undercover buys that did not concern the operation that Jones was working (there were more than 7 others during the time period under Topczewski), many of the other officers on the team could have, and it would have been operationally appropriate for them, to do the undercover buys. This would have included, for

example, Marcus Miles, who did the last two undercover buys before Topczewski became the Sergeant as shown on Exhibit E; Jones Dec. Also, prior to Topczewski's transfer to the team, the dangerous controlled buys were split amongst the officers. (*Pltf.'s Dep.*, Ex. 1, at 177:15-22). When Topczewski became Sergeant, he made all the assignments. *Pltf.'s Dep*, Ex. 1, at 80:9-81:2.

**RESPONSE:** **Defendant admits sentences 1 and 2 of paragraph 29. Defendant objects to sentence 3 of paragraph 29 as speculative and conclusory. See *Berry*, 618 F.3d at 692 (rejecting uncorroborated testimony that was speculative and conclusory) *citing Payne*, 337 F.3d at 770-73. At his deposition, Lt. Mostek testified that generally a lead investigator would do their own buy but that "there's a thousand different narcotics investigations and different manners in which to conduct them." *Mostek Dep.,* Ex. 4, 22:8-23:9. Defendant admits that sentence 4 of paragraph 29 accurately states that Exhibit E shows Officer Padalino was the lead investigator on July 18, 20, 26, 29, and August 3rd but objects to the remainder of said sentence as speculative and conclusory. See *Berry*, 618 F.3d at 692 (rejecting uncorroborated testimony that was speculative and conclusory) *citing Payne*, 337 F.3d at 770-73. Defendant objects to sentence 5 of paragraph 29 as conclusory, immaterial, and speculative, and thus it should be stricken. See *De*, 912 F.Supp.2d at 712-713 ("vague, argumentative, immaterial, or conclusory allegations" are improper under Local Rule 56.1 and finding that the assertion of facts not supported by the record should be disregarded) (citing *Roger Whitemore's Auto Servs., Inc.*, 424 F.3d at 674); *Insolia v. Philip Morris, Inc.*, 216 F.3d at 598-99 (material facts are those that might affect the outcome of the suit). See also, *Berry,* 618 F.3d at 692. Defendant objects to sentence 6 of paragraph 29 as immaterial to the claims at issue in this case as said buys occurred before Topczewski became Sergeant. See *De*, 912 F.Supp.2d at 712-713 ("vague, argumentative, immaterial, or conclusory allegations" are improper under Local Rule 56.1 and finding that the assertion of facts not supported by the record should be disregarded) (citing**

*Roger Whitemore's Auto Servs., Inc.*, 424 F.3d at 674). **Defendant admits that sentences 7 and 8 of paragraph 29 approximate Plaintiff's deposition testimony.**

30.     When Plaintiff was on Sergeant Kresky's team, Topczewski's predecessor, Plaintiff worked overtime and that continued when Topczewski took over. *Pltf's Dep*, Ex. 1, at 28:22-29:9.

**RESPONSE: Defendant admits paragraph 30.**

31.     Had she still worked on her old team under Topczewski, her overtime would have remained roughly the same because she would have still been working the same active cases that were causing her to work overtime. On her team, she did not have active cases to work because she was new to the team. Jones Dec.; *Pltf's Dep.*, Ex. 1, 87:17-23.

**RESPONSE: Defendant objects to paragraph 31 as speculative, conclusory, and a misstatement of the record. See *Berry*, 618 F.3d at 692 (rejecting uncorroborated testimony that was speculative and conclusory) *citing Payne*, 337 F.3d at 770-73. In the cited deposition passage, Plaintiff testified that she received overtime on her new team but never testified that had she remained on her old team her overtime would have remained the same. *Pltf's Dep*, Ex. 1, 87:17-23. Moreover, Plaintiff's declaration is silent on the issue of overtime. See also *Boyd*, 225 F.Supp.3d at 715 (holding that it is improper for a party to misstate the cited record and the consequence of doing so is that those responses are disregarded.)**

32.     Set forth below, is the computation of Plaintiff's overtime hours and "burn time" hours/money that she lost resulting from working under Topczewski.

**Monetary value of lost overtime and accumulated hours**
Officer Jones would use previously accumulated work hours in order to remove herself from the unsafe and hostile work environment Sgt. Topczewski created. The monetary value of each hour is $41.20, which was Officer Jones' hourly rate at the time.

    June 7, 2017 – 8 hours
    July 14, 2017 – 8 hours
    Aug 04, 2017 – 8 hours
    Aug 05, 2017 – 8 hours
    Aug 08, 2017 – 8 hours

Aug 15, 2017 – 2 hours
Aug 18, 2017 – 1 hour
Sep 13, 2017 – 5 hours

----------------------------------------
48 hours @ $41.20 = $1977.60


By being taken off her team and dumped to another one, Officer Jones missed out on overtime opportunities related to her narcotic investigations. Below is a breakdown of the overtime hours for the seven weeks prior to being removed from the team and the seven weeks after being removed.

| Before | After |
|---|---|
| July 27, 2017 – 3 hours | Oct 08, 2017 – 17.25 hours |
| Aug 10, 2017 – 4.5 hours | Oct 12, 2017 – 7.13 hours |
| Aug 16, 2017 – 9 hours | Oct 19, 2017 – 6.75 hours |
| Aug 17, 2017 – 14.25 hours | Oct 20, 2017 – 9.75 hours |
| Aug 20, 2017 – 12 hours | |
| Aug 22, 2017 – 10.5 hours | |
| Aug 23, 2017 – 7.88 hours | |
| Aug 29, 2017 – 6 hours | |
| Aug 31, 2017 – 8.25 hours | |
| Sep 03, 2017 – 12 hours | |
| Sep 04, 2017 – 12 hours | |
| 99.38 hours | 40.88 hours |

Officer Jones lost 58.50 hours of overtime. At a rate of $41.20, that is a loss of $2410.20 in overtime. Combined with the time Officer Jones used to escape the unsafe and discriminatory work environment Sgt. Topczewski created, Officer Jones lost $4387.80. Ex. H, Plaintiff's Responses to Defendant's Interrogatories, number 3.

**RESPONSE: Defendant objects to paragraph 32 for not containing a citation to the record and for misstating the record. Pursuant to LR 56.1, "[e]ach asserted fact must be supported by citation to the specific evidentiary material, including the specific page number that supports it." LR 56.1(d)(1), (d)(2). "The court may disregard any asserted fact that is not supported with such a citation." L.R. 56.1(d)(2); *Specialty Earth Scis., LLC v. Carus Corp.*, 15-CV-06133, 2021 WL 4804076, at \*1 (N.D. Ill. Oct. 14, 2021); *De*, 912 F. Supp. 2d at 712-713 ("vague, argumentative, immaterial, or conclusory assertions" or "nothing more than purely speculative factual allegations" are improper under Local Rules 56.1 and further finding the**

assertion of facts not supported by or misstating the record should be disregarded) (citing *Roger Whitemore's Auto. Servs., Inc.*, 424 F.3d at 674). Without waiving and subject to the objection, Defendant states that the amount of overtime Plaintiff earned in 2017 after being transferred to a new team was consistent with the amount of overtime she earned prior to the transfer. In June the Plaintiff accrued 6 hours of overtime. In July she accrued 33 hours of overtime. In August she accrued 9.75 hours of overtime. In September, after being transferred to a new team, she accrued 91.88 hours of overtime. In October, she accrued 6 hours of overtime. And in November, she accrued 40.88 hours of overtime. *See* Plaintiff's Earnings Statements, Jones DEF 955-994.

33.     Being involuntarily transferred from a team has a stigma to it and is generally recognized as being a negative to an officer's place in the police community and their reputation. Jones felt that it was punishment for her to be moved because there is a stigma attached to it, and even asked Kimble not to move her for that reason. *Pltf.'s Dep.,* Ex. 1, at 98:20-99:14; see also, *Mero Dep.,* Ex. 6, at 23:15-24:7; *Assaf Dep*, Ex. 7 at 40:21-42:8 (being dumped usually has a "negative connotation.").

**RESPONSE:** Defendant admits that paragraph 33 generally summarizes the testimony of Plaintiff, Mero, and Assaf but denies that it accurately quotes said testimony as Mero, for example, stated that being dumped indicates an involuntary transfer from a team at the behest of a supervisor. *Mero Dep*, Ex. 6, at 23:15-24:7. Additionally, not only does being dumped not automatically have a negative connotation but Topczewski testified that he did not know who moved the Plaintiff from his team, but it wasn't him. *PSAF*, Ex. B, 47:19-22; 57:13-22.

34.     The day after Jones complained to Kimble about Topczewski, the latter obtained a CR against Jones, which caused her to be investigated for misconduct. He alleged that in a group text, 4 days earlier (September 11), in which he and 6 other members of the team, including Topczewski and Jones

were participating, that Jones wrote a demeaning text about the team. See Ex. I, the face pages of the CR complaint.

**RESPONSE**: **Defendant admits that paragraph 34 summarizes the content of the CR Topczewski filed against Jones relating to the group text but objects to the assertion that said complaint was filed after Jones complained to Kimble as inadmissible hearsay since Plaintiff testified that she was told by Lt. Ryle that Topczewski was made aware she had filed a CR against them.** *Pltf.'s Dep*, **Ex. 1, at 114:4-16. See** *Bordelon v. Bd. of Educ. of the City of Chicago*, **811 F.3d at 991 (an out-of-court statement offered to prove the truth of its content is inadmissible at the summary judgment stage).**

35.    Topczewski's CR about the texts became a subject of investigation. It caused stress to Jones who also went and obtained statements from other participating team members to indicate that the statement was nothing other than banter. Several months later the complaint was deemed frivolous, and it was administratively closed. However, it remains part of the public record on public websites and Jones fears that citizens, as they sometimes do, to yell out and heckle various when they are policing a disturbance. *Pltf.'s Dep.,* Ex. 1, at 112:10-113:18. Jones Dec.

**RESPONSE:** **Defendant admits that the text messages became the subject of a CR investigation. Defendant admits that Plaintiff obtained statements from other team members in response to the CR investigation but objects to the characterization of the procurement of said statements as stressful since the record is silent on this point.** *Pltf's Dep.,* **Ex. 1, at 112:10-113:18. See** *Boyd*, **225 F.Supp.3d at 715 (holding that it is improper for a party to misstate the cited record and the consequence of doing so is that those responses are disregarded.) Defendant also objects to the assertion that the complaint was administratively closed because it was deemed frivolous as a misstatement of the record and a purely speculative factual allegation. See Ex. H.** *See Boyd,* **225 F.Supp.3d at 715.** *See De*, **912 F. Supp. 2d at 712-**

13 ("vague, argumentative, immaterial, or conclusory assertions" or "nothing more than purely speculative factual allegations" are improper under Local Rules 56.1 and further finding the assertion of facts not supported by or misstating the record should be disregarded) (*citing Roger Whitemore's Auto. Servs., Inc.*, 424 F.3d at 674). Personal knowledge can include reasonable inferences, but it does not include speculating as to an employer's state of mind, or other hunches or rumors. *Widmar v. Sun Chem. Corp.*, 772 F.3d 457, 460–61 (7th Cir. 2014). Defendant admits that said allegations remain part of the record on public websites but object to the assertion that citizens will heckle her with this information while she performs her job as conclusory and speculative. *See De*, 912 F.Supp.2d at 712-13.

36.     In the text, the team was joking about what persons were on the team. Bill Murphy sends an obviously sarcastic text reading, "Wait. . . is Murphy still on the team!?!? With an unhappy face emoji. Jones responds and says, "Yes, Murph, you're still on this sinking ship." Murphy then sent back a text of a sinking ship. Ex. J.

**RESPONSE:** Defendant admits that paragraph 36 summarizes the content of that portion of Ex. J, but objects to Plaintiff's assertion that "Bill Murphy sends an obviously sarcastic text" as speculative and conclusory. *See De*, 912 F. Supp. 2d at 712-13 ("vague, argumentative, immaterial, or conclusory assertions" or "nothing more than purely speculative factual allegations" are improper under Local Rules 56.1 and further finding the assertion of facts not supported by or misstating the record should be disregarded) (*citing Roger Whitemore's Auto. Servs., Inc.*, 424 F.3d at 674).

37.     Topczewski's Facebook posts are contained in Exhibit A. There are 19 of them. They all have a racist or misogynistic, antisemitic, or other offensive prejudice depicted in them. Example posts include one that displays a Nazi symbol with Jewish stars that states "let's just offend everybody at once"; another that states "He-Man Woman Haters Club;" another displaying a confederate flag, is

followed by one that is made to look like a monopoly game card but is titled "Race Card"; another Archie Bunker meme that references "some 7th Century Islamic Goat Humpers." Another rhetorically asks how come black pride, Mexican pride, etc. is OK but "White Pride = Racist"; and another has a picture of the behinds of 4 females in small bikinis bent over side by side making a circle, and a female head in the middle of all that, and the post reads: "Taste the rainbow." Ex. A.

**RESPONSE: Defendant objects to paragraph 37 as immaterial as to claims at issue in this case since said Facebook posts are all self-identified as being generated in 2015, two full years before Topczewski was assigned to Narcotics and worked with Plaintiff, and also objects to the extent Plaintiff's description of the posts mischaracterizes their contents. *See De*, 912 F.Supp.2d at 712-713 ("vague, argumentative, immaterial, or conclusory allegations" are improper under Local Rule 56.1 and finding that the assertion of facts not supported by the record should be disregarded) (*citing Roger Whitemore's Auto Servs., Inc.*, 424 F.3d at 674); *Insolia v. Philip Morris, Inc.*, 216 F.3d at 598-99 (material facts are those that might affect the outcome of the suit).**

Dated: October 13, 2022

Respectfully Submitted,

Office of the Corporation Counsel
Counsel for the City of Chicago

By:  */s/ Aaron M. Gole*
Aaron M. Gole
Kristen Woytowicz
Assistant Corp. Counsel
Assistant Corp. Counsel Supervisor

City of Chicago Law Department
2 N. LaSalle Street, Suite 640
Chicago, IL 60602
312.744.6964 / 312.744.0428
Aaron.Gole@cityofchicago.org
Kristen.Woytowicz3@cityofchicago.org